No. 5:12-CV-567-FL

| | |
|---|---|
| SAMANTHA GALE JONES, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, DE-23] pursuant to Fed. R. Civ. P. 12(c). Claimant Samantha Jones ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on January 12, 2009 and SSI on December 31, 2008, alleging disability beginning August 1, 2008. (R. 28). Both claims were denied initially and upon reconsideration. (R. 28). A hearing before the Administrative Law Judge ("ALJ") was held on October 21, 2010, at which Claimant was represented by counsel

and a vocational expert ("VE") appeared and testified. (R. 28). On November 21, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 28-37). On June 21, 2012, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of medical opinion evidence; (2) improper assessment of Claimant's credibility; and (3) failure to pose a hypothetical that adequately reflected Claimant's RFC. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings

3

("Pl.'s Mem.") at 12, 17, 21.

## FACTUAL HISTORY

### I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 30). Next, the ALJ determined Claimant had the following severe impairment: bipolar disorder with psychotic features. *Id.* The ALJ also found Claimant had a nonsevere impairment of headaches. (R. 31). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, moderate difficulties in social functioning and concentration, persistence and pace with two episodes of decompensation, but neither for an extended duration. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertional levels. (R. 32) The ALJ also identified the following non-exertional limitations: only simple, routine, repetitive tasks, occasional interaction with coworkers and supervisors, no interaction with the public, and no jobs requiring complex decision-making, constant change, or dealing with crisis situations. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 32-35). At step four, the ALJ concluded Claimant did not have past relevant work. (R. 36). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined

4

Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 36-37).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 43 years old and unemployed. (R. 49, 51). Claimant attained an eleventh grade education and subsequently obtained her GED. (R. 50). Claimant was last employed with Hardee's fast food restaurant for approximately three months, where her duties included cooking. (R. 51). Claimant has also worked for a cleaning service cleaning office buildings for six months, as a production assistant in a box packing warehouse, as a waitress for approximately seven months, as a foil cleaner for a few months, and in various other types of work. (R. 52-56).

Claimant explained several medical conditions support her disability claim and her inability to work full-time. These medical conditions include bipolar disorder, headaches, and pain. (R. 56, 60). Claimant testified she has received mental health treatment off and on for over twelve years. (R. 56). Claimant testified she experiences both manic and depressive phases. (R. 57). Claimant testified that prior to September 2009, she used to cry all the time, think people were trying to hurt her, and attempted to commit suicide. *Id.* Claimant testified that she was generally unstable prior to September 2009 with her condition deteriorating because she would take herself off her medications periodically. (R. 58). Claimant testified to having a manic episode sometime in 2008 where she had a confrontation with a lady in the parking lot. (R. 59). Claimant testified that since September 2009, she has continuously taken her medications and it has improved her problems a lot and done "wonders for [her] life," although she still has problems with depression. (R. 58). Claimant testified that she has been treated by Drs. O'Daniel and Briscoe for almost two years and

5

that their treatment is helping her a lot. (R. 59). Claimant testified she has monthly appointments with Dr. O'Daniel and meets with Dr. Briscoe, her therapist, weekly. (R. 59).

Claimant testified that she is unable to work due to fatigue from her medications. (R. 60). Additionally, Claimant testified she has experienced pain her whole life and typically takes over-the-counter pain medications. *Id.* Claimant testified her pain is primarily from headaches, but that she also has pain in her arms, legs and tail bone on a daily basis. *Id.* Claimant testified she fractured her tail bone years ago. *Id.* Claimant testified that she can only sit for approximately 20 minutes before she needs to stand up and can only stand for approximately twenty minutes without having to sit down. (R. 61). Claimant testified that she does laundry, vacuums, sweeps and straightens up her home by herself, but must take breaks to sit down because she is tired. (R. 62). Claimant also testified that she cooks for the house and does the shopping for the house once a month. (R. 63). Claimant testified she is able to climb the stairs into her home, but rarely leaves her home except for doctors appointments, weekly church attendance, or an occasional movie. (R. 63, 65-66). Claimant testified she is also able to dress and bath herself. (R. 64).

### III. Vocational Expert's Testimony at the Administrative Hearing

Paula Day testified as a VE at the administrative hearing. (R. 66-70). The ALJ assumed Claimant had no past relevant work (R. 67), and then asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform work assuming the individual has no exertional limitations, but can perform only perform work involving simple, routine and repetitive tasks, occasional contact with coworkers and supervisors, no interaction with the public, and no complex decision making, constant change, or handling crisis situations. (R. 67-

6

68). The VE responded with positions available at all exertional levels: (1) kitchen helper at the medium level (DOT# 318.687-010); (2) laundry folder at the light level (DOT# 369.687-018); and (3) addresser at the sedentary level (DOT# 209.587-010). (R. 69). The ALJ next modified the hypothetical to include marked limitation in the following areas: (1) attention/concentration for extended periods of time; (2) regular schedule attendance; (3) sustain ordinary routine without supervision; (4) work in coordination with or proximity to others without being distracted; (5) complete normal work week without interruptions from psychologically-based symptoms; (6) perform at consistent pace without unreasonable rest periods; (7) accept instructions and respond appropriately to criticism; (8) get along with coworkers; and (9) respond to changes in work setting. (R. 69-70). The VE responded that such limitations would preclude all competitive work. (R. 70). The VE further testified that her testimony is consistent with the DOT. *Id.*

## DISCUSSION

### I. The ALJ properly considered the medical opinion evidence.

Claimant contends the ALJ failed to properly weigh the medical evidence. Pl.'s Mem. at 12. This court disagrees.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to

7

"great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[2] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5; SSR 96-6p, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant],

---

[2]     The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. §§ 404.1527(e), 416.927(e).

8

and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; *see also* SSR 96-6p, 1996 WL 374180, at *1.

### Treating Source Opinions of Drs. O'Daniel and Briscoe

Dr. O'Daniel, Claimant's treating psychiatrist, and Dr. Briscoe, Claimant's therapist, provided treating source statements on four separate occasions – May 28, 2009 (R. 513-520); March 9, 2010 (R. 580-587); May 6, 2010 (R. 590-597); and May 11, 2010 (R. 589). In these statements, the treating doctors generally stated that Claimant cannot perform full time work and that her mental illness prevents her from maintaining employment for an undetermined period.[3] (R. 585, 589, 596). The records of Drs. O'Daniel and Briscoe indicate an ongoing treatment relationship as Claimant's mental healthcare providers for a period of time spanning almost two years, with a record showing at least 35 separate opportunities between the two physicians to observe, evaluate and treat Claimant.[4] (R. 412-437, 488-511, 512-560, 580-597). While acknowledging the continuing treatment of Claimant by Drs. O'Daniel and Briscoe since November 2008 via multiple references to their treatment notes, the ALJ accorded "limited weight" to their opinions based on (1) the lack of support for the opinions in the treatment notes and (2) Claimant's own hearing testimony indicating that she "was doing much better with treatment." (R. 35). Additionally, the ALJ noted that the opinion dated March 9, 2010 relates to Claimant's "physical symptoms for which these

---

[3] The opinion dated March 9, 2010 largely discusses Claimant's complaints of pain. (R. 580-587) (noting chronic physical pain that occurs daily and is moderately severe).

[4] Duplicate copies of the treating physician's treatment records appear in the administrative transcript between Exhibits 8F, 12F, 13F, 14F, and 15F. The court routinely cites to the records appearing in Exhibits 8F (R. 412-437) and 14F (R. 488-511) where duplicates appear.

9

sources have not treated the claimant and are beyond their areas of expertise." (R. 35).

Claimant contends the opinions of Drs. O'Daniel and Briscoe should have been given controlling weight and that the ALJ failed to explain the specific findings in the treatment notes indicating Claimant was not as limited as found by these treating physicians. Pl.'s Mem. at 12-17. Although the ALJ does not directly discuss the doctors' specific treatment notes when assigning weight to these opinions, he adequately discusses their treatment notes in his summary of the medical evidence of record. (R. 34). The ALJ clearly specified which parts of the record he relied upon in explaining his reasons for assigning little weight to the treating source opinions. (R. 34). Specifically, the ALJ notes the following: (1) Dr. O'Daniel diagnosed Claimant with bipolar disorder with depressed mood in 2008 (R. 427); (2) Claimant was prescribed seroquel, depakote, cymbalta, and zoloft for treatment (R. 494); (3) Claimant has responded well to treatment (R. 502); (4) Claimant briefly stopped taking her medication in May 2009 and suffered a recurrence of symptoms such as hallucinations (R. 498-99); (5) Claimant suffered from increased stress in July 2009 due to family problems (R. 490-92, 558-59); (6) other than these two time periods, Claimant's affect is noted as brighter and she is able to smile appropriately (R. 414-416, 495, 497-99, 506, 508, 538); (7) Claimant reported sleeping better (R. 493, 496, 510, 554); (8) Claimant worked through her anger at her family members during therapy sessions (R. 414-416, 490, 495, 497, 503); (9) Claimant had a GAF score of 55 indicating only moderate impairment of functioning (R. 425, 427). The ALJ notes also that mental status examinations by Dr. O'Daniel indicate Claimant's thought processes, attention and concentration, mood and affect, and memory functioning were normal and that she denied suicidal ideation. (R. 34); *see* (R. 421) (November 10, 2008 mental status exam indicating only mood/affect and speech "normal"); (R. 420) (November 11, 2008 mental status exam indicating

only attention/concentration and speech "normal"); (R. 419) (December 15, 2008 mental status exam indicating "normal" mood/affect, attention/concentration, speech and appearance, but indecisive thought and poor insight/judgment); (R. 510) (January 12, 2009 mental status exam indicating "normal" in all areas); (R. 413) (February 9, 2009 mental status exam note indicating "normal" in all areas); (R. 505) (March 5, 2009 mental status exam note indicating "normal" except for depressed and/or flat mood and affect); (R. 417) (March 12, 2009 mental status exam note indicating "normal" in all areas); (R. 500) (April 21, 2009 mental status exam note indicating "normal" except for depressed mood and affect); (R. 555) (June 29, 2009 mental status exam indicating "normal" attention/concentration and thought, fair judgment with depressed mood/affect); (R. 554) (August 5, 2009 mental status exam indicating "normal" in all areas); (R. 553) (September 9, 2009 mental status exam indicating "normal" speech, attention/concentration and thought with depressed mood/affect). With respect to Claimant's testimony, the ALJ noted that Claimant testified she has consistently been taking her medications since September 2009 and that her depression improved with treatment. (R. 33, 58-59).

In her brief, Claimant directs the court to treatment records by Drs. O'Daniel and Briscoe which list or acknowledge Claimant's symptoms and difficulties supporting the treating physician opinions that Claimant is extremely hindered in her ability to work. However, the treatment notes cited by Claimant in support of the treating physician opinions do not support the extreme degree of limitation opined by the physicians for a variety of reasons: (1) the treatment notes correspond to intake evaluations following Claimant's hospitalization with no prior treatment or an earlier period of Claimant's treatment regimen (R. 419-421, 424-25); (2) Claimant was not compliant in taking medications in the weeks surrounding various treatment dates noting increased symptoms (R. 498-

11

99, 506); or (3) the same records indicating depressed mood or otherwise, simultaneously reported improvement or a generally normal mental status exam. (R. 414-415, 417, 490-92, 496, 503-506, 553); *see also* (R. 502) (a note taken the same day as R. 503, April 6, 2009, and cited by Claimant in support of her argument, indicates Claimant is "making excellent progress"). Moreover, the evidence cited by the ALJ in support of his conclusion originates from many of the same reports cited by Claimant. The ALJ properly considered the record as a whole – in a sequential order and in relation to surrounding circumstances – to understand the course of Claimant's condition and the effectiveness of Claimant's treatment regimen. The treatment records cited by Claimant do not support to the limitations suggested by Drs. O'Daniel and Briscoe and the ALJ's decision to assign only "little weight" is supported by substantial evidence and properly supported by citation to the treatment record.

Claimant also contends the ALJ improperly discounted the medical opinions of Claimant's treating physicians to the extent the opinions addressed Claimant's physical limitations on the grounds that the treating physicians were specialized in treating Claimant's mental conditions. Pl.'s Mem. at 17. However, one of the factors to be considered by the ALJ in determining the weight to assign a medical opinion is the specialization of the physician. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.928(c)(5). More weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Id.* Accordingly, the ALJ was entitled to consider the areas of expertise of the doctors in providing their opinions and the record indicates they treated Claimant for her mental health issues, not physical impairments. There is no indication in the record of a physical examination, diagnosis or treatment relating to Claimant's physical complaints by either treating physician. The ALJ did not err in

12

considering this as a factor in discounting the opinions of Drs. O'Daniel and Briscoe.

In criticizing the ALJ's rationale for discounting the doctors' opinion, Plaintiff essentially contends that the ALJ improperly weighed the evidence before him. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). The ALJ thoroughly summarized the findings of Drs. O'Daniel and Briscoe upon examination. Given the treatment record and Claimant's testimony that her condition had largely improved from medication and treatment, the ALJ properly relied on the inconsistency between the medical opinions and the treatment records. *See Craig*, 76 F.3d at 590 (stating a medical opinion should be accorded significantly less weight if it is not supported by clinical evidence); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). It is not the task of the court to reweigh the evidence and reach its own independent conclusions. *See Mastro*, 270 F.3d at 176. Rather, the court's duty is to determine if substantial evidence supports the ALJ's conclusion. *See id.* In applying the deferential standard of review, the court finds the ALJ's decision to discount the opinions of Drs. O'Daniel and Briscoe is adequately explained, consistent with proper standards of law, and based on more than a scintilla of evidence. Additionally, the ALJ complied with SSR 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded the medical opinions and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ

13

has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to the opinions of Drs. O'Daniel and Briscoe.

### Non-examining Physician Opinions

Claimant next contends that the ALJ assigned improper weight to the opinions of non-examining physicians and that such opinions cannot be accorded more weight than the treating physician opinions. Pl.'s Mem. at 14-15. Specifically, Claimant contends that the ALJ was not permitted to adopt their findings due to the lack of supporting evidence. *Id.* at 15.

The non-examining physician opinions at issue are at variance with the opinions of Drs. O'Daniel and Briscoe and generally conclude that Claimant is capable of performing simple, routine, repetitive tasks in a low-stress and low-demand environment with limited interaction with others at a variety of exertional levels. *See* (R. 382) (September 4, 2007 MRFC); (R. 396) (September 4, 2007 Psychiatric Review Technique); (R. 441) (June 4, 2009 MRFC); (R. 455) (June 4, 2009 Psychiatric Review Technique); (R. 564) (September 23, 2009 MRFC); (R. 578) (September 23, 2009 Psychiatric Review Technique). Claimant cites a string of Fourth Circuit cases in support of her argument that consulting source opinions should not have been assigned greater weight than the treating source opinions. Specifically, Claimant relies on *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), for the proposition that the non-examining physician opinions cannot serve as substantial evidence supporting a denial of benefits. However, *Smith* and similar cases stand for the narrow proposition that non-examining physician opinions cannot serve as substantial evidence when the opinion is "contradicted by *all of the other evidence* in the record." *Id.* at 345. Claimant argues the present case is aligned with the principle acknowledged in *Smith* and that all other evidence of record

14

contradicts the non-examining physician opinions.

Claimant's argument here as to the non-examining physician opinions relates to her argument that the treating physician opinions of Drs. O'Daniel and Briscoe should have been assigned controlling weight because there is no evidence contradicting those opinions. However, the court's previous finding that the ALJ's decision, to assign less than controlling weight to the treating physician opinions, is supported by substantial evidence renders Claimant's argument on this issue meritless. The court's previous discussion regarding the treating physician opinions indicates that the non-examining physician opinions are *not* contradicted by all other evidence of record. The record includes medical evidence that supports the non-examining physician opinions, significantly, Claimant's own testimony that she has improved with treatment. (R. 58-59). The consideration of the 20 C.F.R. §§ 404.1527(c), 416.927(c) factors, specifically the consistency of the opinion with the medical record, convinced the ALJ to accord "great weight" to the non-examining physician opinions.

Again, Claimant's argument essentially contends the ALJ improperly weighed the evidence before him. An ALJ is allowed to assign greater weight to a non-examining physician opinion in appropriate circumstances. *See* SSR 96-6p, 1996 WL 374180, at *3. The court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). Here, the ALJ carefully considered the entire record and found the opinions of the non-examining physicians to be more consistent with the record than the opinions of Drs. O'Daniel and Briscoe. The ALJ's summary of the medical evidence, as outlined above, and Claimant's testimony regarding the effectiveness of her treatment for her mental health issues demonstrate that the ALJ did not err is assigning the weight he did and

15

he sufficiently explained how he determined the weight assigned.

Accordingly, the ALJ properly weighed the medical opinion evidence and Claimant's argument as to this issue is without merit.

## II.   The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ applied the incorrect legal standard in evaluating Claimant's credibility and that his credibility finding is not supported by substantial evidence. Pl.'s Mem. at 17. This court disagrees.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at \*2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at \*3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See Craig*, 76 F.3d at 595-96.

16

Claimant's first contention is that the ALJ applied the wrong legal standard. Pl.'s Mem. at

19. Specifically, Claimant takes issue with the ALJ's use of "template" or "boilerplate" language

which Claimant contends indicates that the ALJ determined Claimant's RFC before considering her

credibility, thereby committing error at step two of the credibility analysis. The portion of the ALJ's

opinion that Claimant argues evidences this error is as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to cause the
> alleged symptoms. However, the claimant's statements concerning the intensity,
> persistence, and limiting effects of these symptoms are not credible to the extent they
> are inconsistent with the above residual functional capacity.

(R. 34). In support of her argument, Claimant cites to the Seventh Circuit decision, *Bjornson v.*

*Astrue*, 671 F.3d 640 (7th Cir. 2012) in which the same "template" language was criticized. The

Seventh Circuit stated that:

> One problem with the boilerplate is that the assessment of the claimant's "residual
> functional capacity" (the bureaucratic term for ability to work) comes later in the
> administrative law judge's opinion, not "above" – above is just the foreshadowed
> conclusion of that later assessment. A deeper problem is that the assessment of a
> claimant's ability to work will often (and in the present case) depend heavily on the
> credibility of her statements concerning the "intensity, persistence and limiting
> effects" of her symptoms, but the passage implies that ability to work is determined
> first and is then used to determine the claimant's credibility. That gets things back-
> wards.

*Id.* at 645. While the *Bjornson* decision is not binding on this court, the Seventh Circuit has also

acknowledged that the use of template language does not necessitate remand where the ALJ explains

his conclusions adequately. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *see also Mascio*

*v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *3 (E.D.N.C. July 1, 2013) (stating that

*Bjornson* "does not stand for the proposition that use of this template language necessitates remand"

and is not binding on this court). Although the *Bjornson* decision resulted in a remand, this outcome

17

was not because of the ALJ's use of the template language, but because the ALJ "failed to build a bridge between the medical evidence . . . and the conclusion that [claimant] is able to work full time." *Bjornson*, 671 F.3d at 649. Thus, the ALJ's use of this template language in this case is not error per se and does not ipso facto require remand.

Moreover, the ALJ's opinion in this case sufficiently connected his conclusion to the medical evidence and is supported by substantial evidence. (R. 35). For example, the ALJ states the following in his opinion regarding his finding that Claimant is not fully credible:

The claimant has been diagnosed with a bipolar disorder. Her acute symptoms were precipitated by relapse to use of cocaine and marijuana. However, she has been successfully treated by Dr. O'Daniel with psychotropic medication and with psychotherapy. The claimant reported to the doctor that her symptoms were improved with treatment and she reiterated this at the hearing. She has had two brief periods of exacerbation of her symptoms which were related to failure to comply with the treatment regimen and to family stressors. However, when she resumed treatment, her symptoms were controlled. Her mental status findings were essentially normal and she reported that she was able to engage in normal activities of daily living and social interactions. The claimant is seeking to gain custody of her nephew which indicates that her symptoms are not as intractable as alleged. The claimant has reported suffering from chronic pain involving the spine and upper/lower extremities but these allegations are not supported by the medical record. In addition, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.

(R. 35). In addition, the ALJ engaged in more than two pages of narrative discussion of Claimant's symptoms, medical evidence, and medical source opinions. (R. 32-35). The ALJ noted Claimant's history of mental health issues, which included suicide attempts and hospitalization at times, (R. 32-33), however, the ALJ specifically noted his reliance on the treatment notes of Drs. O'Daniel and Briscoe indicating that Claimant's mental health is stabilized with treatment and medication. (R.

18

34). The ALJ also relied on Claimant's own testimony at the hearing as to her daily activities in and outside the home and that her mental health condition is improved with medication and treatment. (R. 33, 35, 58, 61-65). Finally, the ALJ relied on the complete absence of records showing a physical examination or diagnostic testing relating to Claimant's pain. Claimant contends the record does not "bear out the conclusion" that Claimant's symptoms improved with treatment, that she had "essentially normal" mental status exams, and that she engaged in ordinary activities. Pl.'s Mem. at 20. Claimant's argument is essentially suggesting the court re-weigh the evidence before the ALJ which it will not do. It is evident that the ALJ's finding that Claimant is not fully credible is supported by substantial evidence in the record. Accordingly, Claimant's argument as to this issue is without merit.

## III. The hypothetical posed to the VE adequately characterized Claimant's mental impairment.

Claimant contends that the ALJ erred in relying on the VE's testimony at step five because the ALJ failed to ask proper hypothetical questions to the VE. Pl.'s Mem. at 21-22. Specifically, Claimant contends that the RFC finding, and thus the hypothetical question, should have reflected the opinion evidence of Drs. O'Daniel and Briscoe and, secondly, that the hypothetical questions should have explicitly included the ALJ's finding that Claimant had moderate difficulties in social functioning and in concentration, persistence, and pace. *Id.*

As an initial matter, the court notes that Claimant's first argument, that the ALJ's hypothetical question should have reflected the limitations in the opinions of Drs. O'Daniel and Briscoe, is without merit. The court has previously determined that the weight assigned to these physicians opinions is supported by substantial evidence and the ALJ did not err in assigning "little

19

weight" to them. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding the ALJ does not have a duty to include in hypothetical questions limitations that are not supported by the record). The court also previously concluded that the ALJ's finding as to Claimant's credibility is supported by substantial evidence. Accordingly, any argument at step five relying on a previous argument that the court has rejected is without merit.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50; *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e). In order for a vocational expert's opinion to be relevant or helpful, "it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible."); *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

20

Claimant contends the ALJ found "moderate" difficulties in social functioning and in concentration, persistence, and pace and that these limitations should have been reflected in the hypothetical question posed to the VE. Pl.'s Mem. at 22. The mental activities Claimant identifies as having been ignored by the ALJ are "paragraph B" criteria related to a claimant's mental impairments. (R. 31). Claimant cites several cases from outside this circuit and a case from this district for the proposition that hypothetical questions must specifically account for a claimant's mental impairments at step two. *See, e.g.*, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011); *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009); *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996); *Tune v. Astrue*, 760 F. Supp. 2d 255 (E.D.N.C. 2011). However, the "paragraph B" criteria are used by the ALJ to determine whether Claimant has a severe impairment, and if so, whether that impairment meets one of those listed in Appendix 1 of the regulations – not whether she retains the functional capacity to perform any other work. *See* SSR 96-8p, 1996 WL 374184, at *4 (providing that the "B" criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"). Therefore, the "paragraph B" criteria do not equate to a mental RFC assessment. *Id.*; *see also Yoho v. Comm'r of Soc. Sec.*, No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (stating the ALJ is not obligated to transfer the findings on the Psychiatric Review Technique form verbatim to the hypothetical questions); *Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov. 14, 2008). The sole determination for this court is whether the ALJ gave the VE "proper hypothetical questions which fairly set out all of claimant's impairments." *Walker*, 889 F.2d at 50.

In this case, the hypothetical posed to the VE incorporated Claimant's RFC as determined

21

by the ALJ and the ALJ precisely set out Claimant's individual mental impairments. (R. 67-68); *see Walker*, 889 F.2d at 50. The ALJ characterized Claimant's mental impairments as limiting her to performing the following:

[Claimant] has nonexertional limitations that would include [] decreasing ability to concentrate on and attend to work tasks to the extent that the individual could only do simple, routine, repetitive tasks. . . . The limitations would also include occasional contact with coworkers and supervisors, no dealing with the public, and unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

(R. 67-68). While the ALJ did not provide the VE with his "paragraph B" findings reflecting moderate difficulties in social functioning and concentration, persistence, and pace, he appropriately exercised "some discretion to craft [his] hypotehtical question to communicate to the vocational expert what [C]laimant [could] and [could not] do." *Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006). "[I]t is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Id.* The ALJ's statement that Claimant is capable of performing simple, routine, repetitive tasks sufficiently conveyed Claimant's difficulties in concentration, persistence, and pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (explaining "the ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [a claimant's] deficiencies in concentration, persistence, or pace"). The ALJ gave great weight to the mental RFC assessments and psychiatric review technique evaluations which support these restrictions. (R. 35-36). Moreover, Claimant's argument that the ALJ improperly omitted limitations in social functioning is unsupported by the record as the ALJ's hypothetical clearly stated that there was to be only occasional contact with coworkers and supervisors and no contact with the public. (R. 68); *see Mason v. Astrue*, No. JKS-10-2157, 2013

WL 990399, at *4 (D. Md. Mar. 12, 2013) (finding no error in a hypothetical limiting an individual to no more than occasional contact with coworkers, supervisors, and the public where the claimant had limitations in social functioning). The ALJ's hypothetical adequately conveyed Claimant's limitations in the area of social interaction. While Claimant contends that the ALJ should have included additional limitations in the hypothetical, the ALJ's hypothetical sufficiently reflected the limitations supported by substantial evidence. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-21] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 16th day of August, 2013.

Robert B. Jones, Jr.
United States Magistrate Judge

23